JOHN S. HYERS, Respondent, *v.* VICTORIAN REALTY COMPANY, INC., and Others, Appellants, Impleaded with Others, Defendants.

First Department, July 6, 1925.

Liens — mechanic's lien — foreclosure — evidence insufficient to show value of work — fact that architect approved requisitions, not accompanied by itemized statements, for sixty per cent of value of work in progress not conclusive that payments made constituted sixty per cent of value.

In an action to foreclose a mechanic's lien based on work and labor performed on a cost plus contract, the evidence is insufficient to sustain the burden put upon the plaintiff of proving what the cost was, and that that cost was reasonable.

The fact that the architect approved requisitions, which were not accompanied by itemized statements of material and labor, for sixty per cent of the work as it progressed, is not conclusive that the payments made on those requisitions constituted sixty per cent of the value of the work, especially in view of the fact

---

* See Pers. Prop. Law, § 85, as added by Laws of 1911, chap. 571, known as Sales of Goods Act.— [REP.

that it was shown that some of the work for which requisitions were made was not done, and that the defendant continually protested against the requisitions presented.

APPEAL by the defendants, Victorian Realty Company, Inc., and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of August, 1924, upon the report of a referee appointed to hear and determine the issues in an action to foreclose a mechanic's lien.

*Ferris & Ansbacher* [*Jacob Ansbacher* of counsel], for the appellants.

*Godfrey & Marx* [*Walter E. Godfrey* of counsel; *Aaron H. Marx* with him on the brief], for the respondent and Beruroy, Inc., assignee.

McAVOY, J.:

This was an action to foreclose a mechanic's lien which was referred to a referee who found in favor of the claimant, lienor. Judgment was entered on his report for over $33,000.

The contract upon which the controversy arose was made to alter two small brownstone buildings, which were four-story and basement houses thirty-nine feet wide and sixty-one feet deep. The arrangements for altering contemplated the raising of the basement and first floor to make a new first floor to contain stores with an extension in the rear of both houses and with alterations on the third, fourth and fifth floors to constitute two separate apartments on each floor with a new iron stairway to the third floor, new store fronts and new plumbing and electrical, paint and plastering work, etc. The contractor originally estimated that this would not cost more than $29,000. Thereafter the extension item was eliminated and changes in the upper floors consisting of two inside partitions and plumbing on the third, fourth and fifth floors were made and two one-room apartments were installed on the second floor. There were also some additional matters incidental to the completion of the work done. The referee found that the total cost aggregated $66,166.11 which constituted nearly $40,000 beyond the original estimate and this for changes which were of comparatively minor importance.

The contracts were on a cost plus fifteen per cent basis. There was no agreement on the part of the builder to keep within the $29,000 already estimated. The estimate was merely allowed in proof as in the nature of an admission indicating excessive cost in the final result. No direct testimony was given with respect to the cost of these alterations by any person connected with the actual installation and carrying out of the work. One Hyers

testified that he was present on the job about half an hour each day and not there on every day. He is the plaintiff in this action and he gave a description from the plans and specifications of the amount of the work done during the period that the construction was proceeding. Neither did the architect give any direct testimony with respect to the amount of work done or materials furnished nor any specified proof indicating the value of such items of work done or such materials furnished. Nor was the foreman or superintendent actually in charge of the job produced as a witness to prove the installation of materials and the amount of labor. Plaintiff also omitted the production of any delivery sheets, cost accounts or vouchers. The plaintiff relied in part for his proof of cost on the production of certain subcontracts for the making of the alterations which he had made with other contractors. The total cost of these subcontracts was the sum of $11,068. None of the subcontractors were produced to indicate that the cost of material and labor furnished made by them was actually the cost of such items.

Plaintiff's main reliance, however, seems to rest upon requisitions which plaintiff made during the construction under the terms of the contract for sixty per cent payments on account of the work done which payments were to be made pursuant to architect's certificates which set forth his estimates of the amount of such work. He claims that these are conclusive as establishing the cost of the work and are not capable of being overcome except by impeachment of their validity through a showing of fraud or collusion on the part of defendants. The contract, however, does not make any provision that these requisitions, based upon the alleged certificates, shall be final. The provision in respect to partial payments of sixty per cent during the progress of the work is as follows:

" Article 3. The Owner agrees to pay the Contractor in current funds for the performance of the contract. * * * On the 15th and 30th day of each month sixty per cent of the value, proportionate to the amount of the contract, of labor and materials incorporated in the work at bldg. #683 Madison Ave. City, up to the 15th & 30th day of that month as estimated by the Architect, plus 15% of such amounts less the aggregate of previous payments. On substantial completion of the entire work, provided the work be fully completed and the contract fully performed, the balance due under the contract, amounting to 40% of the cost of this alteration plus 15% shall be paid in three equal notes bearing 6% interest for 30 days, 60 days and 90 days from date of final completion. Said notes shall be made out by the Victorian Realty

Co. and Camas Bros., and shall be endorsed by Victorian Realty Co., Camas Bros., and Victor and Alexander Camas, individually. Said notes will not be considered as payment in full until they are paid under dates due."

These requisitions offered in evidence were objected to, but were received and are apparently the basis of the referee's findings as to the cost of labor and material to which fifteen per cent thereof is added to make the total cost of construction of the building. Whatever effect requisitions would have when accompanied by an itemized statement of the time expended by the different mechanics in carrying out the work, and vouchers showing the delivery of all the materials for which payment was required and an itemization of their cost, these requisitions were insufficient since there was no ground for a finding therefrom of an acquiescence by the defendants from their receipt and payment that such requisitions contained reasonable costs. Besides, testimony was given, as affecting their accuracy, that a witness visited the premises and found that the plaintiff was charging for bricklayers when there were no bricklayers working on the job and the architect who drew these certificates admitted he certified for work and materials that were never done or installed. The entire work connected with the extension which was originally provided for in the specifications was ultimately eliminated, but the architect nevertheless certified alleged work and materials in connection with this extension. In his examination he was asked: " Q. Have you any idea of the approximate amount of money that you * * * claim was paid by Hyers for work done on the extension? A. I haven't any idea. Q. But whatever it was, you certified that it was proper to be paid? A. Yes, sir. * * * Q. Did you ever certify for the payment of any moneys for the skylight, for instance? A. Yes. * * * Q. You don't know whether they had actually constructed the skylight? A. No, sir."

It was also apparent from the proof that there was no acquiescence in the items of the requisitions during their presentation, but that they were continually protested against by the defendant Camas. He claimed on occasions that he was being overcharged. When he was asked why he did not stop paying when Hyers would not give vouchers of the material furnished and would not carry on the operation properly, the defendant witness said that Hyers stated he would drop the job if he stopped paying. Hyers also stated that he would give the attorney for the lenders who were financing this project, who protested also at the lack of information afforded, such items as he wished or he would be through with the operation.

It is obvious that no consent to accept the figures received in these requisitions for the sixty per cent payments should be the basis of any finding of actual cost of construction in any labor performed and material furnished. That the total sum of $66,000 for the completion of the work as made out by these estimates was excessive and improper in the nature of the work for labor and material is also indicated by the testimony of two builders whose appraisement of the approximate cost of construction for what was actually done in this alteration job was about $42,000. The referee evidently concluded, as his opinion indicates, that since the contract called for cash payments of sixty per cent balance to be paid in notes, and since a certification by the architect of what the contractor had expended for labor and material up to the ninth payment aggregated a total to that payment of $35,700, and that such sum was sixty per cent of the actual cost, that forty per cent additional would amount to $66,166.66. On this calculation the balance which was due amounted to $30,466.66. This amounts to a conclusion that where the owner paid sixty per cent of the certificates under protest and reserved the other forty per cent until after completion so as to verify the correctness of the estimates, such payment of sixty per cent was conclusive against him as to the one hundred per cent due. Obviously, the retention of forty per cent under these contracts for the purpose of final adjustment upon the whole cost would be unavailing if such reasoning were adopted.

We think that the plaintiff under such proof failed to sustain the burden put upon him of proving what the alteration cost was and that such cost was reasonable.

In the case of *Title Guarantee & Trust Co.* v. *Pam* (192 App. Div. 268, 322) Mr. Justice DOWLING said: " A contract to do work upon a basis of cost plus a stipulated commission does not mean that the contractor has the right to expend any amount of money he may see fit upon the work, regardless of the propriety, necessity or honesty of the expenditure, and then compel repayment by the other party, who has confided in his integrity, ability and industry. While the statements as presented by the contractor made out a *prima facie* case of its right to recover the amount shown thereby, accompanied as · they were by vouchers and proof of payment, the defendant presented proof which impeached these statements, showed that they were in many particulars deceptive and unreliable, and that many items appearing thereon represented extravagance, waste and dishonesty upon the part of contractor's employees and representatives on the job. Sufficient was shown to completely destroy the value of the statements and vouchers

and to open the question as to what was the real cost of the work, honestly, efficiently and properly done."

The bare requisitions of Hyers and the so-called certificates of the architect Boehler did not make a case so conclusive that the contractor did not have to produce any evidence as to the actual cost in the face of the impeaching testimony and direct contradictions found here. These contracts did not provide that the estimates of the architect should be conclusive.

Article 27 in both contracts provided that nothing but the final payment should be conclusive. There is absolutely nothing in the provision for the estimates of the architect to the effect that the same are to be regarded as conclusive. On the contrary, being designated as " estimates " would signify that they were not to be precisely accurate, but simply to afford practical means of making payments as the work progressed.

We think that the finding of the referee had no evidence to sustain it, and that the judgment should be reversed and a new trial ordered before another referee, with costs to the appellants to abide the event.

CLARKE, P. J., DOWLING, MERRELL and BURR, JJ., concur.

Judgment reversed and new trial ordered before another referee, with costs to the appellants to abide the event. Settle order on notice.